**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ARLETTE CAMPOS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>TJX COMPANIES, INC.,<br><br>　　　　　　　　　　　Defendant. | Case No. 1:24-cv-11067-ADB |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

**SMITH KRIVOSHEY, P.C.**
Joel D. Smith (BBO 712418)
867 Boylston Street, 5th Floor #1520
Boston, MA 02116
Telephone: (617) 377-7404
Email: joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Israel Rosenberg
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  ykopel@bursor.com
　　　　irosenberg @bursor.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ............................................................................................................. 1

FACTS ............................................................................................................................ 1

ARGUMENT .................................................................................................................. 3

I.    PLAINTIFF HAS ARTICLE III STANDING TO BRING HER CLAIMS ..................... 3

    A.    Defendant's Conduct Is A Highly Offensive Invasion Of Privacy ........................ 3

    B.    Courts Have Historically Held That Harm To One's Privacy Gives Rise
To Article III Standing ................................................................................. 5

    C.    Decisions From Wiretapping Cases Do Not Apply To The Arizona Statute .......... 8

    D.    The Court Should Not Adopt The Holding Of *Hartley v. Urban
Outfitters, Inc.* ......................................................................................... 10

II.    THE ARIZONA STATUTE WAS PASSED IN RESPONSE TO THE SAME
EXACT CONDUCT DEFENDANT DID TO PLAINTIFF IN THIS CASE ................... 11

III.    DEFENDANT'S ARGUMENTS ATTEMPT TO ADD NONEXISTENT
REQUIREMENTS TO THE ARIZONA STATUTE ................................................ 12

    A.    The Arizona Statute Has No "Communication Service Provider"
Requirement .............................................................................................. 12

    B.    The Arizona Statute's Legislative History Shows No Intent To Limit Its
Provisions To Communication Service "Providers" .......................................... 15

    C.    The Fact That Other Statutes Are Limited To Communication Service
"Providers" Does Not Show That Such A Limitation Applies Here ...................... 15

IV.    DEFENDANT DID NOT "ALREADY HAVE" THE INFORMATION IT
PROCURED USING THE SPY PIXELS ............................................................... 16

V.    THE ARIZONA STATUTE HAS NO "SIMULTANEOUS TRANSMISSION"
REQUIREMENT ............................................................................................. 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*AAA Cab Serv., Inc. v. Indus. Comm'n of Arizona*,
  213 Ariz. 342 (Ct. App. 2006) ................................................................. 13

*Adams v. Am.'s Test Kitchen, LP*,
  680 F. Supp. 3d 31 (D. Mass. 2023) .......................................................... 7

*Bryant v. Compass Grp. USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) ................................................................. 5, 7

*Bryant v. Compass Grp. USA, Inc.*,
  2020 WL 6534581 (7th Cir. 2020) .............................................................. 5

*Carl v. First Nat'l Bank of Omaha*,
  2021 WL 2444162 (D. Me. 2021) ................................................................ 6

*Carter v. Scripps Networks, LLC*,
  670 F. Supp. 3d 90 (S.D.N.Y. 2023) ........................................................... 7

*Clough v. Revenue Fronter, LLC*,
  2019 WL 2527300 (D.N.H. 2019) ............................................................... 6

*Cook v. GameStop, Inc.*,
  689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................................................... 8, 10

*Cothron v. White Castle Sys., Inc.*,
  20 F.4th 1156 (7th Cir. 2021) .................................................................. 7

*D'Angelo v. FCA US, LLC*,
  2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ................................................. 9

*Dickson v. Direct Energy, LP*,
  69 F.4th 338 (6th Cir. 2023) .................................................................... 6

*Drazen v. Pinto*,
  74 F.4th 1336 (11th Cir. 2023) .............................................................. 7, 8

*Egan v. X-Mode Soc., Inc.*,
  2024 WL 2701967 (D. Mass. May 24, 2024) .................................................. 3

*Emmett v. Delta Air Lines, Inc.*,
  2024 WL 2816502 (W.D. Pa. June 3, 2024) .......................................... 8, 9, 11

*Gallo Motor Ctr. Corp. v. Mazda Motor of Am., Inc.*,
     172 F. Supp. 2d 292 (D. Mass. 2001) ................................................................ 14, 15

*Garcia v. Build.com, Inc.*,
     2023 WL 4535531 (S.D. Cal. July 13, 2023) ........................................................... 9

*In re BPS Direct, LLC*,
     2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) ......................................................... 9, 10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
     934 F.3d 316 (3d Cir. 2019) .................................................................................... 3

*Ives v. Bath & Body Works, LLC*,
     2024 WL 1677526 (D.N.H. Apr. 18, 2024) ....................................................... 5, 6, 7

*James v. Walt Disney Co.*,
     2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ........................................................... 9

*Laccinole v. Students for Life Action Inc.*,
     2022 WL 3099211 (D.R.I. 2022) ............................................................................. 6

*Lawlor v. N. Am. Corp. of Illinois*,
     2012 IL 112530 (2012) ...................................................................................... 8, 11

*Lightoller v. Jetblue Airways Corp.*,
     2023 WL 3963823 (S.D. Cal. June 12, 2023) ...................................................... 8, 9

*Miller v. Brooks*,
     123 N.C. App. 20 (1996) .................................................................................. 8, 10

*Patel v. Facebook, Inc.*,
     932 F.3d 1264 (9th Cir. 2019) ................................................................................ 3

*Pratt v. KSE Sportsman Media, Inc.*,
     586 F. Supp. 3d 666 (E.D. Mich. 2022) ............................................................ 7, 11

*Rowan v. Pierce*,
     2023 WL 5672575 (D.P.R. Sept. 1, 2023) ............................................................... 6

*Sagar v. Kelly Auto. Grp., Inc.*,
     2021 WL 5567408 (D. Mass. 2021) ........................................................................ 6

*Schnur v. JetBlue Airways Corp.*,
     2024 WL 2816552 (W.D. Pa. June 3, 2024) ...................................................... 9, 11

*Spokeo, Inc. v. Robins*,
     578 U.S. 330 (2016) ........................................................................................... 5, 7

*State v. Garza Rodriguez*,
  164 Ariz. 107 (1990) ................................................................ 12

*State v. Harm*,
  236 Ariz. 402 (Ct. App. 2015) .................................................. 16

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................... Passim

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
  489 U.S. 749 (1989) .................................................................. 3

**STATUTES**

18 Pa.C.S. § 5703 ........................................................................ 9

18 U.S.C. § 1039 ......................................................................... 2

18 U.S.C. § 2307 ....................................................................... 16

18 U.S.C. § 2710 ......................................................................... 7

47 U.S.C. § 227 .......................................................................... 6

A.R.S. § 13-3001 ....................................................................... 16

A.R.S. § 44-1376 ................................................................. Passim

Cal. Pen. Code § 631(a) .............................................................. 9

M.G.L. c. 93B § 4 ..................................................................... 14

**OTHER AUTHORITIES**

Arizona House Bill Summary, 2007 Reg. Sess. H.B. 2726 ...................... 12

Plaintiff Arlette Campos ("Plaintiff") respectfully submits this opposition to Defendant TJX Companies, Inc.'s ("Marshalls" or "Defendant") Motion to Dismiss Plaintiff's Complaint (the "Motion" or "MTD") (ECF No. 13).

## **INTRODUCTION**

Plaintiff alleges that Defendant, in violation of A.R.S. §§ 44-1376-1376.05 (the "Arizona Statute" or "Statute"), invaded her privacy by unlawfully spying on how she interacts with marketing emails she receives from Marshalls including logging the time and place she read emails from Marshalls, through spy pixel tracking software placed without Plaintiff's consent. Marshalls and other retailers use spy pixels to track its recipients' reading habits. Marshalls exploits this data to build customer profiles so it can sell and market more products to them. Its recipients may be aware that they receive marketing emails, but they are not aware of, nor do they consent to, Defendant's surreptitious means of tracking their sensitive reading behavior. The Arizona Statute is designed to prevent this invasion of privacy. Because Plaintiff has Article III standing to bring her claim in this Court and because Plaintiff properly alleges a violation of the Arizona Statute, the Court should deny Defendant's Motion.

## **FACTS**

This case involves Marshalls tracking Plaintiff's email reading activity without her consent. Compl. ¶¶ 4, 10, 52. As part of its marketing practices, Defendant captures and logs sensitive information through spy pixels including the time and place subscribers open and read their messages, how long the subscribers read the email, subscribers' location, subscribers' email client type, subscribers' IP address, and subscribers' device information. *Id.* ¶¶ 4, 9, 48, 51. The use of spy pixels is a "grotesque invasion of privacy" according to industry advocates. *Id.* ¶ 31.

From September 2022 to March 2024, Plaintiff received promotional emails from

Marshalls.  *Id.* ¶ 8.  Plaintiff most recently opened an email from Marshalls in March 2024.  *Id.*

Little did Plaintiff know Defendant was tracking and recording her sensitive email data every time

she opened an email from Marshalls.  *Id.* ¶¶ 9-10, 51-52.  Marshalls logged the time and place

where Plaintiff opened her emails, how long she read the emails, her location, her email client

type, her IP address, and her device information.  *Id.* ¶¶ 9, 47-48.[1]  Defendant's invasive

surveillance of Plaintiff's sensitive reading habits and clandestine collection of her confidential

email records invaded her privacy and intruded upon her seclusion.  *Id.* ¶¶ 5, 54.  Plaintiff never

consented to Defendant's tracking practices.  *Id.* ¶¶ 4, 6, 10, 44, 52.

Plaintiff alleges this conduct violates the Arizona Statute, A.R.S. § 44-1376.01.  *Id.* ¶¶ 1,

45-55.  The Statute was enacted in response to the Hewlett-Packard ("HP") pretexting scandal.  *Id.*

¶ 28.  The HP pretexting scandal involved HP's board surreptitiously procuring the telephone and

email records of newspaper reporters in an effort to catch leakers.  *Id.* ¶¶ 15-27.  Congress held a

hearing and brought to light HP's invidious behavior.  *Id.* ¶ 26.  During the hearing, Congress

uncovered how HP used spy tracking software to record when, where, and who opened the emails

that were sent to the newspaper reporters.  *Id.*  The discovery shocked the Congressional

committee.  *Id.*  One Congressman called email trackers "equivalent to going through the mail in

my mailbox."  *Id.*  In response, Congress passed the Telephone Records Protection Act, 18 U.S.C.

§ 1039, and Arizona passed A.R.S. §§ 44-1376-1376.05.  *Id.* ¶¶ 27-28.

---

[1] Defendant argues that, "[w]hile Plaintiff alleges that the pixel could record whether an email
was forwarded or printed, she does not claim to have taken such actions, and thus cannot claim
any injury from it."  MTD at 7 n. 3.  That is specious.  To the extent Plaintiff did not forward an
email, the spy pixels told Defendant about that too.  The invasion of privacy exists equally
whether Plaintiff did or did not take such actions.

<u>**ARGUMENT**</u>

**I.      PLAINTIFF HAS ARTICLE III STANDING TO BRING HER CLAIMS**

Defendant argues that this Court lacks subject matter jurisdiction because Plaintiff "alleges no harm beyond a statutory violation itself."  MTD at 2.  Defendant is wrong.  Defendant's intrusions are highly offensive invasions of privacy, and courts in this district and elsewhere have repeatedly held that violations of statutes based on the torts of invasion of privacy or intrusion upon seclusion give rise to Article III standing.

**A.      Defendant's Conduct Is A Highly Offensive Invasion Of Privacy**

To establish Article III standing, "a plaintiff must show: (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "[I]ntangible harms can . . . be concrete," such as "disclosure of private information" and "intrusion upon seclusion."  *Id.* at 425.  "The Supreme Court has . . . recognized the common law roots of the right to privacy."  *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (collecting cases).  "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."  *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989).  "As observed by the Third Circuit, in an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data is untenable." *Egan v. X-Mode Soc., Inc.*, 2024 WL 2701967, at *3 (D. Mass. May 24, 2024) (Casper, J.) (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019)) (cleaned up).

Defendant categorizes the invasion of privacy caused by its spy pixels as being a "purely

procedural violation, divorced from any concrete injury." MTD at 6. That is wrong. The trackers used by Defendant "capture and log sensitive information including the time and place subscribers open and read their messages, how long the subscribers read the email, subscribers' location, subscribers' email client type, subscribers' IP address, and subscribers' device information." Compl. ¶ 4. This amounts to an "invasive surveillance of Plaintiff's sensitive reading habits." *Id.* ¶ 5.

Lawmakers and industry experts have repeatedly recognized that the use of spy pixels is a privacy violation. Congressman Michael Burgess called it "equivalent to going through the mail in my mailbox." Compl. ¶ 26. Then-congressman Jay Inslee said "Speaking for the 600,000 people I represent, I think ***their expectations of privacy*** is that a corporation would not use tracer technology to try to follow where they send e-mail …. That's the ***expectation*** that my constituents have." *Hewlett-Packard's Pretexting Scandal: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 109th Cong. 754 (2006) (statement of Rep. Jay Inslee) (emphasis added). "Invisible pixels used to track email activity are now an 'endemic' issue ***that breaches our privacy*** … ." Charlie Osborne, *Tracker pixels in emails are now an 'endemic' privacy concern*, ZDNET (Feb. 17, 2021)[2] (emphasis added). Industry expert, David Heinemeier Hansson, called the use of spy pixels a "***grotesque invasion of privacy***." *Id.* (emphasis added). "The most dangerous threat that email tracking poses is to consumer privacy and personal safety." Mikael Berner, *The Business of Email Tracking: What To Know About Spy Pixels In Your Inbox*, FORBES (Jun 9, 2022).[3] Defendant may think that using spy pixels is

---

[2] https://www.zdnet.com/article/spy-pixels-in-emails-to-track-recipient-activity-are-now-an-endemic-privacy-concern/
[3] https://www.forbes.com/sites/forbestechcouncil/2022/06/09/the-business-of-email-tracking-what-to-know-about-spy-pixels-in-your-inbox/?sh=2084ee793fec

harmless.  But consumers clearly disagree.

### B.      Courts Have Historically Held That Harm To One's Privacy Gives Rise To Article III Standing

Defendant argues that Plaintiff must satisfy "all elements 'essential to liability' of the traditional harm."  MTD at 7.  Defendant is wrong.  "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, *we do not require an exact duplicate*."  *TransUnion*, 594 U.S. at 433 (emphasis added).  "Moreover, where a legislature has conferred a cause of action for violation of a statutory prohibition, the legislature's 'judgment is instructive and important' in discerning whether the plaintiff has suffered an intangible yet concrete harm."  *Ives v. Bath & Body Works, LLC*, --- F.Supp.3d ---, 2024 WL 1677526, at *3 (D.N.H. Apr. 18, 2024) (quoting *Spokeo*, 578 U.S. at 341).  "Courts must afford due respect to [a legislature's] decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation."  *TransUnion*, 594 U.S. at 425.  Indeed, a "legislature may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'"  *Bryant v. Compass Grp. USA, Inc*., 958 F.3d 617, 621 (7th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341, 136 S.Ct. 1540), *amended on denial of reh'g en banc*, 2020 WL 6534581 (7th Cir. 2020).  Where a plaintiff plausibly alleges the deprivation of certain "procedural right[s] granted by statute ... [he] need not allege any additional harm beyond the one [the legislature] has identified."  *Spokeo*, 578 U.S. at 342 (emphasis omitted).

Here, the Arizona legislature sought to enact this statute in order to protect the privacy rights of its constituents.  The Arizona Statute elevates Arizona residents' substantive privacy rights by prohibiting the procurement of "communication service records," which include "subscriber information," "toll bills or access logs," "records of the path of an electronic

communication between the point of origin and the point of delivery" and "nature of the communication service provided, such as … electronic mail." A.R.S. § 44-1376.01. The Statute was passed to protect Arizona residents against such invasions of privacy. *See* Compl. ¶¶ 27-28. Moreover, the prohibition against collecting communication service records is not "an ancillary requirement" of the law—but at the "heart" of the Statute. A.R.S. § 44-1376.01 ("A person shall not … knowingly procure … [a] communication service record … ."); *see Ives,* 2024 WL 1677526, at *5 (finding transfer of driver's license information to be at the "heart" of New Hampshire's privacy law thus sufficient for Article III standing). Therefore, under *TransUnion* Plaintiff has alleged sufficient harm rising to "concrete injury" and has Article III standing to bring her claim in this Court.

Based on this, courts have held that violations of similar substantive privacy statutes, even if they are insufficient for a common law cause of action, give rise to Article III standing in light of *TransUnion*. For example, courts in this circuit have consistently found alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, which prohibits unsolicited marketing calls and faxes, sufficient to give rise for Article III standing. *Rowan v. Pierce*, 2023 WL 5672575, at *7 (D.P.R. Sept. 1, 2023) ("[S]everal district courts in this circuit have also held that unsolicited calls and messages confer standing under the TCPA."); *Laccinole v. Students for Life Action Inc.*, 2022 WL 3099211, at *3 (D.R.I. 2022) (text messages create standing); *Sagar v. Kelly Auto. Grp., Inc.*, 2021 WL 5567408, at *3–4 (D. Mass. 2021) (at least three text messages establish standing); *Carl v. First Nat'l Bank of Omaha*, 2021 WL 2444162, at *7 (D. Me. 2021) ("each violating call is already sufficiently concrete in itself"); *Clough v. Revenue Fronter, LLC*, 2019 WL 2527300, at *3 (D.N.H. 2019) (single text message sufficient for standing). Other circuit courts have held the same. *Dickson v. Direct Energy, LP*, 69 F.4th 338,

344, 348 (6th Cir. 2023) (finding a "ringless voicemail" in violation of the TCPA "bears a close relationship to the kind of injury protected by the common law tort of intrusion upon seclusion," satisfying *Spokeo* and *TransUnion*); *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) ("[T]he harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. … For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury.").  The same is true for alleged violations of Illinois' Biometric Information Privacy Act, 740 ILCS 14 (2008), which prohibits ***the collection*** of a person's biometric information without consent, and also give rises to Article III standing.  *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020); *see also Ives*, 2024 WL 1677526, at *4 n.3 ("While *Bryant* preceded the Supreme Court's opinion in *TransUnion*, the Seventh Circuit has held that *Bryant* remains good law post-*TransUnion*.  *See Cothron v. White Castle Sys.*, *Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021).").  Violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, which prohibits the sharing of video rental records, also are sufficient to give rise for Article III standing.  *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 40-42 (D. Mass. 2023).  Courts have also found standing in other violations of substantive statutory privacy violations.  *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 95 (S.D.N.Y. 2023) ("[P]laintiffs identified a concrete harm under a state law analog to the VPPA by alleging that defendants 'violated Plaintiffs' ***statutorily conferred right to privacy in their reading habits***—an intangible harm presenting ample constitutional mooring for Article III purposes.'") (citing *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 678 (E.D. Mich. 2022) (emphasis added)); *Ives*, 2024 WL 1677526, at *5 (finding that transfer of driver's license information in violation of state law is "concrete harm" because "[t]he mere fact that a person's information may be readily

observable or a matter of public record does not mean that the unauthorized intrusion upon such information fails to establish a concrete injury.").

Privacy intrusions, similar to capturing mail reading records, such as intercepting and sorting mail, *Miller v. Brooks*, 123 N.C. App. 20, 26 (1996), and obtaining phone call records, *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶¶ 8, 33-35, have been recognized to be actionable under the Restatement.  Thus the standing element of this case is no different than violations of the TCPA and BIPA: just as those substantive violations—although they may not be "sufficiently offensive" to satisfy common law threshold—give rise to Article III standing because they have "close relationship to harms recognized by American courts," violations of the Arizona Statute also give rise to Article III standing.  *Drazen*, 74 F.4th at 1345; *TransUnion*, 594 U.S. at 424.

### C.    Decisions From Wiretapping Cases Do Not Apply To The Arizona Statute

Defendant cites out-of-circuit cases regarding wiretapping statutes, in support of its argument that "Plaintiff did not have a reasonable expectation of privacy for any of the information at issue here."  MTD at 9-10 (citing *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58 (W.D. Pa. 2023) and *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023)).  In *Cook*, a court in Pennsylvania found that the intercepted information was not sufficiently private to give rise to Article III standing.  2023 WL 5529772, at *11-13.  Notably, this opinion has been criticized by other courts within that district.  For instance, in addressing *Cook*, another Western District of Pennsylvania federal court noted that this reasoning runs afoul of the Supreme Court's teachings.  "[*Cook*] found that, for Article III standing purposes, it would be appropriate at the pleading stage to determine whether the harm alleged would be sufficient to establish harm under the closely connected traditionally harmful cause of action."  *Emmett v. Delta Air Lines, Inc.*, 2024 WL 2816502, at *14 (W.D. Pa. June 3, 2024).  "***But the Court is instructed more directly by the***

***Supreme Court***." *Id.* (stating that *TransUnion* requires only a "close relationship" not an "exact duplicate" to traditional harm) (emphasis added).   "In fact, in *TransUnion*, the Supreme Court found that the plaintiff's claim of harm can qualify for Article III standing, even if harm would not be established under the standards of the traditional harm the plaintiff's cause of action was closely related to." *Id.* (noting that the defamation cause of action in *TransUnion* did not meet the common law standard); *Schnur v. JetBlue Airways Corp.*, 2024 WL 2816552, at *7 (W.D. Pa. June 3, 2024) (same).   Similarly, for *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023), federal courts in that circuit have disagreed and found standing in internet tracking wiretapping cases.  *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *7 (S.D. Cal. Mar. 28, 2024) (citing *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023); *James v. Walt Disney Co.*, 2023 WL 7392285, at *7 (N.D. Cal. Nov. 8, 2023), *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) ("To the extent *Lightoller* is read to hold non-anonymized information on, e.g., websites visited or search terms used is not sufficiently personal, the Court disagrees.").

Further, wiretapping statutes are different because they do not identify the threshold for what data interception is considered private for a violation.  *See* 18 Pa.C.S. § 5703 (prohibiting the interception of "***any*** wire, electronic or oral communication") (emphasis added); Cal. Pen. Code § 631(a) (prohibiting wiretapping of "the contents or meaning of ***any*** message, report, or communication") (emphasis added).   In other words, these statutes do not "elevate" the privacy interest in of a certain data ***type***, the statutes just prohibit a ***manner*** of invasion—wiretapping.  The court, therefore, was faced with a question: what is the minimum threshold considered private enough to give rise to Article III standing in a wiretap violation?  Because the statutes are silent on this point, the court found that interception of "any" information is too low of a threshold.  *In*

*re BPS Direct, LLC*, 2023 WL 8458245, at *10-12 (E.D. Pa. Dec. 5, 2023) ("BPS") (rejecting the argument that "the conduct of the wiretapping itself, regardless of the sensitivity of the content captured" gives rise to standing).  Because the wiretapping statutes do not elevate any specific private data types, the courts had to look to common law analogues to establish what is reasonably private.  *Id.*, 2023 WL 8458245, at *10 (citing *Cook v. GameStop, Inc.*, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023)).  Here, on the other hand, where the Arizona legislature elevated the privacy interest of a discrete data type—email records—Plaintiff is only required to allege the invasion specified by the Statute just like a plaintiff in a VPPA, TCPA, or BIPA claim.  *See Id.*, 2023 WL 8458245, at *16 n.174 (acknowledging that substantive violations of the VPPA constitute "concrete harm").

### D.     The Court Should Not Adopt The Holding Of *Hartley v. Urban Outfitters, Inc.*

Plaintiff is aware that after Defendant filed its Motion, an out-of-circuit court has held that similar allegations to the instant case were insufficient for Article III standing as pleaded.  *Hartley v. Urban Outfitters, Inc.*, No 23-4891 (E.D. Pa. July 17, 2024).  But Plaintiff respectfully submits that *Hartley* was wrongly decided.

*First*, the court wrongly distinguishes an Arizona Statute claim from a TCPA claim because a robocall "was unsolicited."  *Hartley*, slip op. at 11.  But here too while Plaintiff may have signed up to receive emails, she never solicited, nor consented to, Defendant spying on her email activities.  Compl. ¶¶ 4, 9 ("Defendant never received consent from Plaintiff to procure her private email records.").  The TCPA is thus indistinguishable.

*Second*, the opinion rests on the fact the "types of information allegedly procured are not of the kind in which a party has a reasonable expectation of privacy."  *Hartley*, slip op. at 12.  But as outlined above, mail and reading records are sensitive information and are legally protected privacy interests. *Miller v. Brooks*, 123 N.C. App. 20, 26 (1996) ("sort[ing] through" mail without

reading it actionable under common law); *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530 (obtaining private phone records constitutes common law intrusion upon seclusion); *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 678 (E.D. Mich. 2022) ("Defendant's violation of the [Michigan privacy statute], assumed true, violated Plaintiffs' **statutorily conferred right to privacy in their reading habits—an intangible harm presenting ample constitutional mooring for Article III purposes**.") (emphasis added).

*Third*, while the court acknowledges that "[i]ndividualized data about whether, when, where, and for how long Plaintiff read Defendant's emails presents a closer question," the court relies on *BPS*, for the proposition that "the general practice of gathering digital information about consumers cannot be compared wholesale to the historical protection against intrusions on privacy without an inquiry into what those intrusions actually yield." *Hartley*, slip op. at 12-13. But, as discussed above, the holding of the *Cook* opinion, which *BPS* is based on, that a determination into whether the harm alleged is sufficient to establish a common law cause of action is required at the pleading stage, has been disputed by other courts within that district. *Emmett*, 2024 WL 2816502, at *12; *Schnur*, 2024 WL 2816552, at *7. The Court, therefore, should not require an "exact duplicate" of common law privacy violations and should not follow *Hartley*.

In sum, since Plaintiff alleges, like other violations of substantive privacy statutes, that Defendant violates her substantive privacy rights under the Arizona law, which does not need to be an "exact duplicate" of common law standard and yet is still "highly offensive," Plaintiff has cleared the bar to have Article III standing to bring her action in this Court.

## II.   THE ARIZONA STATUTE WAS PASSED IN RESPONSE TO THE SAME EXACT CONDUCT DEFENDANT DID TO PLAINTIFF IN THIS CASE

Defendant argues that the legislative history "reinforces" its view that the Arizona Statute was only "intended to address pretexting." MTD at 13-14. This is simply wrong. The Arizona

Statute was passed on the heels of the HP spying scandal.  *See* Compl. ¶¶ 27-28; Arizona House Bill Summary, 2007 Reg. Sess. H.B. 2726 ("In January 2007, Congress passed the Telephone Records and Privacy Protection Act …. [the Arizona statute] prohibits a person from knowingly procuring … a communication service record."); *Hewlett-Packard's Pretexting Scandal: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 109th Cong. 16 (2006) (statement of Rep. Blackburn discussing the proposed Consumer Telephone Records Protection Act).  A key part of the HP spying scandal included the use of "ReadNotify, a tracker that, once embedded into an email, allowed them to track the path the message takes, ***including whether the recipient opens the message***."  Compl. ¶ 22 (cleaned up) (emphasis added).  The use of ReadNotify is "a technique also employed by some e-mail marketers."  *Id.*  The technology used in the HP scandal is identical with the technology alleged in the complaint.

Moreover, the Statute was specifically amended—a year after it was originally passed—to include "communication service records," indicating that the Statute is not limited to telephone pretexting.  MTD at 16-17.  Why would the statute have been amended if the amendment was not intended to add anything?  Rather, it is obvious that the Arizona Legislature intended to outlaw the same exact email tracking that was employed by the perpetrators of the HP spying scandal and by Defendant in this case.  *See* Arizona House Bill Summary, 2007 Reg. Sess. H.B. 2726; *State v. Garza Rodriguez*, 164 Ariz. 107, 111 (1990) ("[W]e presume that by amending a statute, the legislature intends to change the existing law.").

## III.   DEFENDANT'S ARGUMENTS ATTEMPT TO ADD NONEXISTENT REQUIREMENTS TO THE ARIZONA STATUTE

### A.   The Arizona Statute Has No "Communication Service Provider" Requirement

Defendant argues that the "statute's plain language shows" that it only pertains to "records

maintained by communication service providers." MTD at 12. The problem with this argument, however, is that the exact opposite is true: nothing in the Statute limits it to communication service providers at all. Defendant fails to cite any such "plain language" because none exists.

The Statute prohibits "procur[ing] communication service record[s]." A.R.S. § 44-1376.01(A)(1). The prohibition is not limited to "providers" of said communication service records. Defendant's argument requires the Court to read in words not present in the Statute. That is impermissible. *AAA Cab Serv., Inc. v. Indus. Comm'n of Arizona*, 213 Ariz. 342, 344 (Ct. App. 2006) ("This court cannot write a term into the statute that the legislature did not include.").

Even if Defendant were correct, it would still be violation of the Statute. Plaintiff's email service provider (e.g., Gmail or Yahoo) would be their communication service provider. Defendant agrees with this. "[A communication service record] is a record of an internet service provider, email provider (e.g., Gmail or Yahoo), or other entities that provide communication services." MTD at 15. Defendant, therefore, by using a spy pixel, is procuring "access logs" or "records of the path of an electronic communication between the point of origin and the point of delivery" and the "nature of the communication service provided [by Gmail or Yahoo], such as … electronic mail." A.R.S. § 44-1376(1). The "procurer" in violation of the Statute does not itself need to be some sort of "provider," nor were the perpetrators of the HP spying scandal any sort of "provider" of service.

Defendant also argues that the Statute's definitions for the terms "telephone record" and public utility record support this reading. In fact, the Statue explicitly defines the terms "public utility" and "telephone company" but never once used the term "communication service provider." ARS § 44-1376(3) and (6). Defendant argues that "to ensure consistency the Court should construe 'communication service record' as limited to records maintained by a communication service

provider." MTD at 12. That also makes no sense. The Court may not redraft the Statute and is not empowered to add provisions to it. The fact that the Statute specifically defined "telephone company" and "public utility" but did not define the term "communication service providers" anywhere is a clear indication that ***no such limitation was intended***. As Judge Gorton has explained:

> Expressio unius est exclusio alterius literally means that to include one thing implies the exclusion of the alternative. Black's Law Dictionary, 304 (Pocket Ed.1996). In the present case, because M.G.L. c. 93B § 4 specifically authorizes only dealers to petition the court for a speedy trial in one section while a parallel section authorizes "either party" to seek such relief, the Court concludes that the legislature intended the former section to be limited to dealers.

*Gallo Motor Ctr. Corp. v. Mazda Motor of Am., Inc.*, 172 F. Supp. 2d 292, 294 (D. Mass. 2001).

Defendant also argues that "canons of construction" mandate this reading because "Plaintiff reads the word 'service' out of the definition of CSR" and because "it would render the separate statutory delineation of 'telephone records' superfluous." MTD at 13. This does not stand up. First, "communication service record" is a defined term. The meaning of it is exactly what is written in the definition which follows. The legislature could have used any term for its definition. It does not make sense to call anything in it superfluous. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 228 (2012) ("It is very rare that a defined meaning can be replaced with another permissible meaning of the on the basis of other textual indications; the definition is virtually conclusive."). Second, Plaintiff does use an email service provider (e.g., Gmail or Yahoo) and her "subscriber information" which "includ[es] name, … electronic account identification and associated screen names, … access logs [or] records of the path of an electronic communication" have been "procured" by Defendant. "[T]he data at issue in the present case" most definitely involves email service. MTD at 13. Therefore, Plaintiff does not

14

"read the word 'service' out of the definition of communication service record." *Id.*

Finally, Defendant argues that Plaintiff's interpretation of the Statute renders "the separate delineation of 'telephone records' superfluous." MTD at 13 n.6.  That makes no sense.  Telephone records are explicitly excluded from the definition.  ARS 44-1376(1) ("Communication service records do not include … a telephone record.").  Further, the Statute must also be viewed in the context of how it developed.  As explained Section II *supra*, Subsection (7), which addresses telephone records was part of the Statute when it was passed in 2006.  Subsection (1), which addresses communication service records, was added in 2007 in a clear attempt to extend liability under the Statute to electronic methods of communication.  Even if there was overlap (and there is not based on the explicit exclusion of telephone records from the definition), this context clearly explains it.  Moreover, Defendant's argument is underdeveloped in that it fails to explain how such overlap would support the additional limitations it now advocates for.  One thing has nothing to do with the other.

**B.     The Arizona Statute's Legislative History Shows No Intent To Limit Its Provisions To Communication Service "Providers"**

Defendant argues next that the legislative history somehow supports its reading of the statute.  But this argument is defied by the actual legislative history in which the Arizona Statute was passed in response to the HP scandal.  Compl. ¶ 28.  There, the "ReadNotify" tracker was used by *investigators* rather than an email company.  *See* Section II *supra* ; *see also* Compl. ¶ 23 (citing Robert McMillan, *HP's e-mail tracer in widespread use*, COMPUTERWORLD (Oct. 10, 2006), https://www.computerworld.com/article/2820287/hp-s-e-mail-tracer-in-widespread-use.html).

**C.     The Fact That Other Statutes Are Limited To Communication Service "Providers" Does Not Show That Such A Limitation Applies Here**

Defendant argues that the Court should read its illusory "communication service provider" requirement into this statute because other statutes, including the Arizona Eavesdropping and

Communication Act, A.R.S. § 13-3001, *et seq.*, and the federal Stored Communications Act, 18 U.S.C. § 2307, contain such a limitation.  MTD at 14-15.  But that only further supports Plaintiff's position and proves that Defendant is wrong.  The fact that those statutes were so explicitly limited is clear evidence that the legislature knew how to include such a limitation when it was intended. And it intentionally chose not to do so with the Arizona Statute.  *See State v. Harm*, 236 Ariz. 402, 407 n.4 (Ct. App. 2015) ("That the legislature has used these similar but different phrases in other sections of the Criminal Code is further evidence it understood and intended a distinction between the phrases.").

## IV.   DEFENDANT DID NOT "ALREADY HAVE" THE INFORMATION IT PROCURED USING THE SPY PIXELS

Defendant argues that it "already had" Plaintiff's email address and the subject line, among other things, prior to sending the email.  This argument is intentionally obtuse.  Plaintiff's complaint makes clear that the violation is that Defendant's tracker recorded "when the email is opened and read, the recipient's location, how long the recipient spends reading an email, whether it is forwarded, whether it is printed, and what kind of email server the recipient uses, among other sensitive information."  Compl. ¶ 35.  This runs afoul of the Arizona Statute's proscription of procuring "access logs" or "records of the path of an electronic communication between the point of origin and the point of delivery" in connection with "electronic mail."  A.R.S. § 44-1376(1) (emphasis added).  Defendant did not already have this information and its argument that Plaintiff's reading of the statute makes "it essentially illegal to email Arizona residents" is nonsensical.  MTD at 17.  Millions of emails are sent every day without the use of spy pixels and related trackers.

## V.   THE ARIZONA STATUTE HAS NO "SIMULTANEOUS TRANSMISSION" REQUIREMENT

Finally, Defendant argues, without any citation to the actual language of the Statute, that

"[n]othing in the Arizona Act or otherwise suggests that a CSR encompasses information regarding how a person subsequently interacts with an email after transmission, rather than the record of the communication itself." MTD at 18. This also makes no sense.

First, as Defendant itself pointed out, the Statute prohibits procurement of a "communication service record" not a "communication record." *See* ARS § 44-1376 (1); *see also* MTD at 13. The definition of "communication service record" explicitly does "not include the content of any stored oral wire or electronic communication or a telephone record." ARS § 44-1376 (1). Indeed, "toll bills or access logs" can **only** exist **after** the communication is over. The same applies to "records of the path of an electronic communication between the point of origin and the point of delivery." *Id.* How could such a record be procured before delivery of the communication even happens? That would be impossible. Defendant's interpretation is defied by the plain words of the Statute.

## CONCLUSION

Plaintiff has properly alleged Defendant violates the Arizona Statute, A.R.S. § 44-1376.01, by tracking her email activity, and this Court has subject matter jurisdiction to hear this claim given that Plaintiff has Article III standing for her claim. For all the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in full.

Dated: July 26, 2024                          Respectfully submitted,

                                              **SMITH KRIVOSHEY, P.C.**

                                              By: */s/ Joel D. Smith*
                                                     Joel D. Smith

                                              Joel D. Smith (BBO 712418)
                                              867 Boylston Street, 5th Floor #1520
                                              Boston, MA 02116
                                              Telephone: (617) 377-7404

Email: joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Israel Rosenberg
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
       irosenberg@bursor.com

*Attorneys for Plaintiff*

## LOCAL RULE 5.2(b) CERTIFICATE OF SERVICE

I, Joel D. Smith, certify that a copy of the foregoing document, filed through CM/ECF

system, will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing (NEF) on July 26, 2024.

*s/ Joel D. Smith*
Joel D. Smith