UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARLETTE CAMPOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TJX COMPANIES, INC.,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 24-cv-11067-ADB<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Arlette Campos ("Campos" or "Plaintiff") filed this putative class action against Defendant TJX Companies ("TJX" or "Defendant"), alleging violations of the Arizona Telephone, Utility and Communication Service Records Act, Ariz. Rev. Stat. Ann. § 44-1376 (the "Arizona Statute"). [ECF No. 1 ("Complaint" or "Compl.")]. Now pending before the Court is Defendant's motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff does not have standing, or, in the alternative, for failure to state a claim under Rule 12(b)(6). [ECF No. 12 (the "Motion" or "Mot.")]. For the reasons set forth below, the Rule 12(b)(1) Motion is **GRANTED** because Plaintiff lacks standing.

I.  BACKGROUND

The following relevant facts are taken primarily from the Complaint, the well-pleaded allegations of which the Court assumes to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

A.      **Factual Background**

Plaintiff is an Arizona resident who alleges that, between September 2022 and March 2024, she frequently opened promotional emails from Defendant. [Compl. ¶¶ 7–8]. She claims that Defendant embedded a "spy pixel" in its promotional emails which collected information about the email and its recipients, including "the email address, the subject of the email, when the email is opened and read, the recipient's location, how long the recipient spends reading an email, whether it is forwarded, whether it is printed, and what kind of email server the recipient uses, among other sensitive information." [Id. ¶ 35]; see also [id. ¶ 4]. Plaintiff concedes that she is a subscriber to Defendant's email list, [id. ¶ 3], but alleges that each time she opened an email, Defendant collected this information without her consent, [id. ¶¶ 4, 10].

Plaintiff asserts that, by failing to receive consent from Plaintiff and other class members, Defendant violated the Arizona Statute, [Compl. ¶ 6], which makes it a crime for a person to "[k]nowingly procure, attempt to procure, solicit or conspire with another to procure a public utility record, a telephone record or communication service record of any resident of [Arizona] without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." Ariz. Rev. Stat. Ann. § 44-1376.01(A)(1) (emphasis added). As relevant here, the Arizona Statute further defines communication service record as including:

> [S]ubscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as . . . electronic mail . . . .

Id. § 44-1376(1).

### B. Procedural History

Plaintiff filed her complaint on April 22, 2024, [Compl.], and Defendant moved to dismiss on June 28, 2024, [Mot.]. Plaintiff opposed the Motion on July 26, 2024, [ECF No. 18 ("Opp.")], and Defendant replied on August 9, 2024, [ECF No. 19 ("Reply")].

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"On a motion to dismiss for lack of subject matter jurisdiction . . . 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Equal Means Equal v. Dep't of Educ., 450 F. Supp. 3d 1, 4–5 (D. Mass. 2020) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)); see also Katz v. Pershing, LLC, 672 F.3d 64, 75 (1st Cir. 2012) ("Article III standing presents a question of justiciability; if it is lacking, a federal court has no subject matter jurisdiction over the claim."). Dismissal is appropriate only when the well-pleaded allegations in the complaint, taken as fact and given the benefit of all reasonable inferences, do not support a finding of federal subject-matter jurisdiction. See Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). "At this stage in the proceedings, our analysis focuses on whether the . . . named plaintiff[] ha[s] standing." Webb v. Injured Workers Pharmacy, LLC, 72 F.4th 365, 371 (1st Cir. 2023).

### B. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383–84 (1st Cir. 2011). Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by

3

reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to adjudicating "actual cases and controversies." Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014) (citing Warth v. Seldin, 422 U.S. 490, 498 (1975)). In so doing, the Constitution "restricts [federal courts] to the[ir] traditional role . . . which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." Summers v. Earth Island Inst., 555 U.S. 488, 492 (2009). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).

"To satisfy this standing requirement, a plaintiff must sufficiently," meaning plausibly, "plead three elements: injury in fact, traceability, and redressability." Kerin, 770 F.3d at 981 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)); see also Gustavsen v. Alcon Lab'ys, Inc., 903 F.3d 1, 7 (1st Cir. 2018) (noting that "[courts] apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6)" when ruling on a Rule 12(b)(1) motion). In other words, "a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." Webb, 72 F.4th at 372 (quoting United States v. Texas, 599 U.S. 670, 676 (2023)). "In applying the plausibility standard required at the motion to dismiss stage," the Court "draw[s] on [its] judicial experience and common sense . . . [and] read[s] the complaint as a whole." Id. at 373–74 (last alteration added) (quoting In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig., 54 F.4th 28, 39 (1st Cir. 2022)).

Defendant challenges whether Plaintiff's allegations satisfy the injury-in-fact requirement for standing. See [ECF No. 13 ("Mem.") at 5–10]. Accordingly, the Court's analysis focuses on that element.[1]

### A. Injury-in-Fact

To sufficiently plead an injury-in-fact, a plaintiff must plausibly allege "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (additional citations and quotations

---

[1] Plaintiff brings claims for damages and injunctive relief. [Compl. at 15–16 ("Request for Relief")]. "The party seeking review has to show they have standing for each form of relief they seek." Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 276 (1st Cir. 2022), vacated and remanded on other grounds, 601 U.S. 1 (2023). "Standing for injunctive relief depends on 'whether [the plaintiff is] likely to suffer future injury.'" Webb, 72 F.4th at 378 (quoting Laufer, 50 F.4th at 276). Plaintiff has not alleged any facts to indicate that TJX's behavior presents a risk of future harm, as all of the alleged conduct has occurred in the past. See generally [Compl.]. As such, Plaintiff lacks standing to pursue injunctive relief, and the Court's opinion therefore focuses on her claim for damages.

omitted). As the First Circuit has explained, "'traditional tangible harms, such as physical harms and monetary harms,' are 'obvious[ly]' concrete." Webb, 72 F.4th at 372 (alteration in original) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021)). "'Concrete' is not, however, necessarily synonymous with 'tangible.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016). In fact, "[i]ntangible harms can also be concrete, including when they 'are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts,' such as 'reputational harms, disclosure of private information, and intrusion upon seclusion.'" Webb, 72 F.4th at 372 (quoting TransUnion, 594 U.S. at 425). A sufficiently close relationship "does not require an exact duplicate" to a common-law harm. TransUnion, 594 U.S. at 424.

In her opposition brief, Plaintiff argues in part that she has suffered concrete injury because "the Arizona legislature sought to enact [the Arizona Statute] in order to protect the privacy rights of its constituents," [Opp. at 10], and "where a legislature has conferred a cause of action for violation of a statutory prohibition, the legislature's judgment is instructive and important in discerning whether the plaintiff has suffered an intangible yet concrete harm," [id. (quoting Ives v. Bath & Body Works, LLC, 731 F. Supp. 3d 254, 259 (D.N.H. 2024) (quotations omitted))]. The Supreme Court has been clear, however, that plaintiffs who allege an injury resulting from a violation of a statutory right do not "automatically satisf[y] the injury-in-fact requirement." TransUnion, 594 U.S. at 426 (citation omitted). While "legislatures 'can raise to the status of legally cognizable injuries certain harms that might otherwise have been insufficient at common law,'" they may not "spin a 'bare procedural violation, divorced from any concrete harm' into an 'injury-in-fact.'" Amrhein v. eClinical Works, LLC, 954 F.3d 328, 331 (1st Cir. 2020) (first quoting Katz, 672 F.3d at 75; and then quoting Spokeo, 578 U.S. at 341). "Only

those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." TransUnion, 594 U.S. at 427. "Accordingly, the question of whether Plaintiff has sufficiently pleaded a statutory violation of the Arizona [Statute] is secondary to this Court's threshold review of the actual injury alleged — that is, whether there is a 'close relationship' between, on the one hand, Defendant's alleged procurement of Plaintiff's data relating to her opening of promotional emails and, on the other hand, a traditionally actionable harm under common law." Hartley v. Urb. Outfitters, Inc., 740 F. Supp. 3d 410, 418 (E.D. Pa. 2024).

### 1. Intrusion Upon Seclusion

Plaintiff analogizes her injuries to those based on the tort of intrusion upon seclusion, which falls under common-law invasion of privacy.[2] See [Opp. at 8–10]; [Compl. ¶¶ 5, 54]. The Restatement provides that "[o]ne who intentionally intrudes . . . upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy," provided that such an intrusion "would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (Am. Law. Inst. 1977). A defendant faces "no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Id. cmt. d. "Therefore, the tort is aimed at a violation or invasion into matters that a person would deem deeply private, personal, and confidential." Mills v. Saks.com LLC, No. 23-cv-10638, 2025 WL 34828, at *4 (S.D.N.Y. Jan. 6, 2025).

---

[2] Historically, American courts have recognized four invasion of privacy torts: (1) casting another in a false light; (2) appropriation of another's name or likeness; (3) intrusion upon seclusion; and (4) public disclosure of private facts. See Restatement (Second) of Torts § 652A (Am. L. Inst. 1977).

Plaintiff alleges and Defendants do not materially dispute that Defendant's emails contained "spy pixels," bits of software code that gather "sensitive information" about its recipients, including "the email address, the subject of the email, when the email is opened and read, the recipient's location, how long the recipient spends reading an email, whether it is forwarded, whether it is printed, and what kind of email server the recipient uses, among other sensitive information." [Compl. ¶ 35]; see also [id. ¶ 4 (noting that pixels may also gather "subscribers' email client type, subscribers' IP address, and subscribers' device information")]. Some of this information clearly does not implicate Plaintiff's privacy or seclusion. For instance, Plaintiff's email address was certainly not private, given that she provided it to Defendant when she consented to receive the promotional emails. [Id. ¶ 3]. Nor was there anything particularly private about the email's subject or other content, as Defendant authored the email and therefore would have known the subject and content with or without the pixels and thus without any impact on any privacy interest asserted by Plaintiff.

The remaining information, particularly "[i]ndividualized data about whether, when, where, and for how long Plaintiff read Defendant's emails presents a closer question." Hartley, 2024 WL 3445004, at *6.[3] Plaintiff avers that such collection "amounts to an 'invasive

---

[3] To the Court's knowledge, three other courts have assessed whether the data collected under the Arizona Statute implicates common law intrusion upon seclusion, and these courts have uniformly concluded that it does not. See Hartley, 2024 WL 3445004, at *7 ("As a matter of law, the Court concludes that digital records reflecting merely the dates and times at which Plaintiff opened promotional emails she signed up to receive, and the length of time she spent reading them, are not sufficiently personal to support a concrete injury."); Mills, 2025 WL 34828, at *5 (holding plaintiff's allegations were not analogous to common law intrusion upon seclusion "as there is not an intrusion into personal and intimate details about traditionally private elements of her life"); D'Hedouville v. H&M Fashion USA, Inc., Case No. C20243386, at 4 (Ariz. Super. Ct. Oct. 11, 2024) ("While Plaintiff characterizes this information as 'intimate details,' the above categories of information gleaned from the tracking pixel are not of the type that would be highly offensive to a reasonable person if intruded upon.").

surveillance of Plaintiff's sensitive reading habits.'" [Opp. at 9 (citing Compl. ¶ 5)]. Plaintiff points the Court to no legal authority, however, for the contention that her "reading habits" would have been considered the type of private, personal information that the tort was aimed at protecting under the common law. See generally [Opp. at 8–13]. To the extent Plaintiff is relying on the idea of covert "surveillance" to carry the day, the Restatement provides examples of such intrusions — namely, tapping telephone wires, opening private or personal mail, and spying into an upstairs window with binoculars — all of which are readily distinguishable from the instant circumstances where Defendant did not open Plaintiff's mail or tap her telephone line and, as the author of the emails, knew their contents without any intrusion. Restatement (Second) of Torts § 652B cmt. b. Further, a glimpse into Plaintiff's email inbox is a far cry from peeking into her upstairs window, particularly where she voluntarily subscribed to Defendant's emails and where there is no allegation that the spy pixels intruded into any other private area of her email inbox or computer. Cf. Hartley, 2024 WL 3445004, at *6 ("If a subscriber were to allege that spy pixels were used, for example, to trawl through the contents of unrelated personal messages, or to gain access to the camera of the subscriber's device, such invasions of privacy likely would be held comparable to common-law intrusion on seclusion and therefore constitute concrete harms, regardless of whether those messages or video recordings were disseminated elsewhere.").[4]

---

[4] Plaintiff's allegation that the spy pixel tracked whether the email was forwarded gives the Court some pause, as it comes the closest to tracking "unrelated personal messages." That said, there is no allegation that the pixels could track to whom the email was forwarded or the content of that forwarded message, and the simple fact of forwarding, without more, does not rise to the level of a "substantial" intrusion into Plaintiff's private affairs.

Plaintiff bears the burden of establishing standing and, without a more precise analog to traditional intrusion upon seclusion, the Court fails to see how the information gathered constitutes a "private affair" or how Defendant's conduct rises to a substantial intrusion highly offensive to a reasonable person. TransUnion, 594 U.S. at 424–25 (holding that while the standing inquiry "does not require an exact duplicate in American history and tradition" it also "is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts").[5]

### 2. Other Analogous Privacy Harms

Perhaps recognizing the lack of common law analog for her injury, Plaintiff additionally argues that Defendant's use of spy pixels is akin to "violations of similar substantive privacy statutes [which], even if they are insufficient for a common law cause of action, give rise to Article III standing." [Opp. at 11]. Specifically, Plaintiff relies on cases under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, "which prohibits unsolicited marketing calls and faxes," and the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, "which prohibits the sharing of video rental records." [Opp. at 11–12 (collecting cases)]. These statues, however, address distinguishable concrete harms.[6]

---

[5] Although not articulated in her Opposition, to the extent Plaintiff is intending to argue that disclosure of her computer's IP address and other device information constitutes an intrusion upon seclusion, this does not seem to be the type of private affair the tort is aimed at protecting. See, e.g., Gary v. Dynatrace, Inc., ---F. Supp. 3d---, 2024 WL 4002766, at *1 (D. Mass. Aug. 22, 2024) (no invasion of privacy where tracking data gathered, among other things, "user's IP address, geolocation data, and information about the device used to access" defendant's website); Heeger v. Facebook, Inc., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("[T]here is no legally protected privacy interest in IP addresses.").

[6] Plaintiff also compares her case to alleged violations of Section 15(b) of the Illinois' Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14 (2008), which the Seventh Circuit has held can establish injury-in-fact sufficient for Article III standing. See Bryant v. Compass Grp. USA, Inc., 958 F.3d 617, 619 (7th Cir. 2020), as amended on denial of reh'g and reh'g en banc

The TCPA "was aimed at unknown robocalls and telemarketers contacting individuals without their consent." Mills, 2025 WL 34828, at *5; see also Sagar v. Kelly Auto. Grp., Inc., No. 21-cv-10540, 2021 WL 5567408, at *4 (D. Mass. Nov. 29, 2021) (stating that, in passing the TCPA "Congress sought to remediate 'nuisance and invasion of privacy'" (citation omitted)). Accordingly, standing has traditionally been found in TCPA cases "where recipients did not consent to be contacted, had no connection to the sender of the marketing material, and had no choice but to receive the communication." Mills, 2025 WL 34828, at *6; see also Sagar, 2021 WL 5567408, at *4 (joining the Second, Fifth, Seventh, and Ninth Circuits "in finding that, in light of the TCPA, the receipt of unsolicited telemarketing text messages, on its own, is sufficient to establish a concrete injury in fact") (emphasis added); Rowan v. Pierce, No. 20-cv-1648, 2023 WL 5672575, at *6–7 (D.P.R. Sept. 1, 2023) (collecting cases where "unwanted" or "unsolicited calls and messages" established standing). Unlike these TCPA cases, Plaintiff subscribed to Defendant's messages, [Compl. ¶ 3], and "frequently opened emails from Defendant to review promotional materials," [id. ¶ 8]. This "distinguishes her claims from those typical to the TCPA" because she "was not only familiar with [TJX] and opened its emails, but she also never unsubscribed to its communications and willfully engaged with its materials." Mills, 2025 WL 34828, at *6; see also Hartley, 2024 WL 3445004, at *6 ("The relationship in [a TCPA] case—between an unwelcome advertiser and a consumer who wanted to be left alone—is materially

---

(June 30, 2020). BIPA requires any private entity to obtain consent before collecting a person's biometric information, which includes, among other things, "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Compt. Stat. 14/10. Although BIPA concerns itself with non-consensual information gathering, the type of information implicated under the statute is of a decidedly more personal nature than that at issue in Plaintiff's Complaint and thus is readily distinguishable. Bryant, 958 F.3d at 624 (noting that a BIPA violation is more than a "bare procedural violation; it [is] an invasion of [a] private domain" and analogizing the defendant's alleged conduct to the common law tort of trespass); id. at 626 (recognizing the "substantive and personal nature of the information" at issue under BIPA).

distinguishable from Plaintiff's relationship with Defendant here, as she not only opted in to receiving emails from Defendant by joining its subscriber list, but continued to consume its promotional materials by regularly opening them.").

Likewise, the VPPA prohibits the disclosure of an individual's video rental and sale records. In the case law upon which Plaintiff relies, it is that disclosure, which sounds in a traditional invasion of privacy, that was found to be offensive. Adams v. Am.'s Test Kitchen, LP, 680 F. Supp. 3d 31, 41 (D. Mass. 2023) (finding standing where Plaintiff did not "allege that Defendants may, at some point in the future, send her personally identifiable information to a third party; she alleges that they already have disclosed such information"); Carter v. Scripps Networks, LLC, 670 F. Supp. 3d 90, 95 (S.D.N.Y. 2023) (finding standing due to the disclosure of private information); see also TransUnion, 594 U.S. at 425 ("Various intangible harms can also be concrete. . . . Those include, for example, . . . disclosure of private information[.]"). Plaintiff does not allege any such disclosure of her information, and "[a]s such, the harm sought to be remedied by the VPPA is not present here and the analogy is [] not sufficient to confer standing." Mills, 2025 WL 34828, at *5.

Because Plaintiff has not alleged a concrete harm or a sufficient historical analog to confer standing, Defendant's motion to dismiss is **GRANTED** for lack of jurisdiction, and therefore, the Court need not reach the issue of whether Plaintiff has adequately pleaded a violation of the Arizona Statute.[7] The Court is sympathetic to Plaintiff's dislike of the use of pixel tracking software, but Plaintiff's recourse does not lie in federal court.

---

[7] That said, Arizona state and federal courts that have addressed the merits of substantially similar claims have held that the Arizona Statute's definition of "communication service record" does not contemplate the information gathered by Defendant's spy pixels, and this Court would be inclined to concur. D'Hedouville, Case No. C20243386, at 4 ("The Court concludes that the

12

## IV.  CONCLUSION

Accordingly, Defendant's Motion [ECF No. 12] is <u>GRANTED</u>.

**SO ORDERED.**

January 31, 2025                                              <u>*/s/ Allison D. Burroughs*   </u>
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE

---

information at issue here—when and how an email was opened, how long it was opened, what device was used, the associated IP address of the recipient, and whether it was forwarded—is not a 'communication service record' or a type of 'access log' protected by [the Arizona Statute]."); <u>Carbajal v. Home Depot U.S.A., Inc.</u>, No. 24-cv-00730, 2024 WL 5118416, at *5 (D. Ariz. Dec. 16, 2024) ("The conduct at issue – sending marketing emails and collecting information through tracking pixels – simply is not covered by the [Arizona Statute]."); <u>see also</u> <u>Mills</u>, 2025 WL 34828, at *7 (concurring with <u>Carbajal</u> and <u>D'Hedouville</u>).

13